## N. G. PITZER, APPELLANT, *v.* W. J. RUSSEL, RESPONDENT.

RIGHT TO SUE UPON A JUDGMENT.—A judgment creditor cannot claim a strict right to sue upon his judgment as often as he may choose, without showing any necessity for such course. Neither the common law nor the practice in the various States, nor anything inherent in the subject, gives to a judgment creditor an absolute right of action on a domestic judgment, unless such action is necessary in order to enable the plaintiff to have the full benefit of his judgment.

COMPLAINT IN AN ACTION UPON A JUDGMENT.—Where a judgment creditor had neglected for more than one year to file a transcript of his judgment with the County Clerk and had thereby lost his power to levy on real estate, and the complaint contained no explanation of the delay: *Held,* not to be error to decide that the complaint did not lay a foundation for an action upon the judgment.

APPEAL from Benton County.

This action was brought in the County Court of Benton County by the appellant, upon a judgment obtained by him before a Justice of the Peace in Grant County in this State. The complaint states that the defendant was indebted to the plaintiff, on the 22d of October, 1863, in the sum of $154.80, for which he gave his promissory note; and it sets out the proceedings in the former action, in which, on the 4th of April, 1866, the plaintiff obtained judgment upon the promissory note for want of answer, and it avers "that the same judgment is in full force, having never been paid or reversed," and that the defendant is now a resident of the county of Benton, owns no personal property, but does own real estate in Benton County.

The defendant demurred, assigning as cause: "1st. That it appears from the complaint that the Court has no jurisdiction of the subject of the action. 2d. The complaint does not state facts sufficient to constitute a cause of action."

The County Court sustained the demurrer. The plaintiff having appealed to the Circuit Court, the judgment of the County Court was affirmed, and the plaintiff now appeals to this Court.

*F. A. Chenoweth,* for Appellant.

A judgment was at common law a good cause of action.

(1 Chitty's Pl. 109, 110, 111; Civ. Code, §§ 5, 143, 145; 20 John. 342; 9 Cow. 26; 3 Blk. Com. 159, 420.)

The Code has not abolished common law causes of action. (9 Barb. 268; 5 John. 175; 13 Id. 322; 15 Id. 220; 6 How. Pr. 229; 19 Barb. 560; 27 Id. 310; 7 Abbott's Pr. 129.)

It has always been regarded in all the States a just foundation for an action. (17 Wend. 329; 1 Hill, 645; 5 Id. 408; 29 Barb. 295.)

Without this action the plaintiff has no remedy. (Civ. Code, § 50.)

*John Burnett,* for Respondent.

When a judgment is obtained upon a demand, the right to maintain an action therefor is at an end. The manner of enforcing collection is then by execution and not by an action. (Civ. Code, §§ 209, 271.) The Code having provided the manner in which judgments, foreign and domestic, can be enforced, that course must be pursued. The Statute of Limitations and the statute for enforcing the judgments of sister States, exclude the idea of enforcing a domestic judgment by action. (Civ. Code, §§ 5, 728.) The manner of enforcing its domestic judgments is provided by each State. (13 Peters, 312.) The manner in which a judgment rendered in Justice's Court may be enforced is provided by statute. (Civ. Code, §§ 50, 51.)

Since the disuse of real actions, actions for debt, upon judgments, have been discountenanced by the Courts as vexatious and oppressive. (Blackstone Com. (Chitty's Ed.) 118, 159.) A practice at the common law not adopted by the Courts of the State will not be recognized. (*Commonwealth* v. *Roby,* 12 Pick. 513.)

A judgment in this State is effected for the purpose of supporting an execution within five years from its rendition, and as a lien upon real estate for ten years therefrom. (*Murch* v. *Moore,* 2 Ogn. 190.)

By the Court, UPTON, J.:

The matters discussed on the argument may be resolved into these questions:

First. Does an action lie, as a matter of course, upon a judgment rendered in this State as soon as the judgment is rendered?

Second. Do the particular circumstances disclosed by the transcript in the case justify the plaintiff in suing upon the judgment?

The respondent claims that the statutory mode of applying for leave to issue execution, and the provisions in relation to filing transcripts and docketing judgments, are intended as a substitute for all other proceedings in the nature of *scire facias* and for all actions upon domestic judgments. The appellant claims that a judgment creditor has a common law right to sue upon his judgment as soon as it is rendered, and it is expressly stated in two of the New York cases, cited by the appellant, that it is a common law right to sue upon a judgment as soon as the judgment is recovered. (*Hale* v. *Angel,* 20 John. 342; *Smith* v. *Mumford,* 9 Cow. 26.) The appellant also claims as a general rule that creating a new remedy for the redress of a private injury does not by implication abolish or take away any existing right of action; and this must be admitted to be the general rule.

If the language used in pronouncing upon the two cases above cited is to be taken without any qualification and received as sound law, and if it is to be deemed expressive of what is sometimes denominated American common law, that is, the general rule of action now in force in this country, except where it is modified by statute, the appellant's conclusion seems a logical and necessary deduction. What is claimed by the appellant amounts to this: That although the Legislature may have intended to provide a statutory mode of enforcing judgment sufficient to meet every contingency that may arise, yet the Legislature has not interdicted the common law right of action if such right existed. It therefore becomes necessary to determine whether the appellant really has the common law right which he claims, and whether the language of those cases correctly declares the common law.

The reports of those cases are not very full, but they in-

dicate that counsel did not at all, in either case, discuss the question whether at common law the action lies as a matter of course as soon as the judgment is rendered ; and it is impossible to determine from the reports of those cases how much consideration was given by the Court to the point, whether at common law the bare existence of the unsatisfied judgment was a sufficient ground for an action, or to say whether debt upon the judgment was there sustained as a matter of course upon grounds or reasons that still exist. An examination of later decisions in that State and of the rulings in other States, leads to the belief that the Court would not have held, upon full investigation, that a plaintiff could maintain debt upon a judgment in a case where he could have the full effect and benefit of his judgment without such action.

It is true that from very ancient times the action of debt on judgment has been recognized as proper, but like every other proceeding at common law, the action was based upon some sufficient reason arising out of the nature or necessities of the case. If it would be a proper construction of the language used in the cases of *Hale* v. *Angel* and *Smith* v. *Mumford* to treat those cases as holding that the common law sustained the action without any other reason or necessity, and solely to enable the creditor to coerce or intimidate the debtor by threatening him with accumulation of costs, it is believed that that position is not sustained by any other case to which our attention has been called.

The cases of *Ames* v. *Hoy* (12 Cal. 11), and *Stuart* v. *Lander* (16 Cal. 374), each declare that the action would lie at common law, and that it is maintainable even though an execution might issue to enforce the judgment. Each of these opinions contains language capable of construction quite as favorable to the appellant as that of the case above cited. But in the first case the report shows that the record-book containing the judgment had been destroyed by fire, and in the second case that "the time in which an execution could be issued had expired, and that there was no means of enforcing the judgment except by action." If the records in the two cases first above-mentioned could be in-

spected, it is possible similar reasons might be disclosed; and if so, the cases would be classified with those where the action is grounded upon special reasons arising out of the necessity of the case, and would not support the applicant's first position.

In most of the subsequent cases arising in the State of New York in which the subject of suing upon judgment is discussed, either the discussion relates to foreign judgments, or the disputed right involves the construction of a statute, or the right to sue is based on a ground of some necessity or of some substantial advantage to the creditor. After an examination of many cases from the same State, we do not find the idea reiterated that at common law an action would lie where no necessity exists, if in fact it ought to be considered as affirmed in these cases. On the contrary, in most of the subsequent cases cited from the State of New York, the proceeding is either based upon a statute, or some special reason appears why the plaintiff cannot otherwise have the full effect of his judgment. In some cases, the plaintiff being an executor, is compelled by statute to sue in order to have the benefit of the former judgment; in others, the new complaint is in the nature of a creditor's bill; in others, it was necessary to try some issue in regard to the validity of the original judgment. (*Cameron* v. *Fowler*, 5 Hill, 306; *Burwell* v. *Jackson*, 5 Seld. 535; *Dobson* v. *Pearce*, 2 Kern. 156.)

This class of actions had frequently been the subject of legislation in that State prior to 1851; at which time it was provided by statute that leave should be obtained from the Court before bringing an action upon a judgment between the same parties. In regard to that provision, Justice Roosevelt remarked in *Burrough* v. *Hull*, "It was enacted 'to prevent the evil of accumulating costs by piling judgment upon judgment.'" And he adds: "The ordinary and, in ninety-nine cases out of a hundred, the proper mode of collecting a debt which is already in judgment is by issuing an execution." When, however, circumstances have occurred since the judgment was rendered, such, for

example, as a discharge in bankruptcy, or a release by act of the creditor, or a constructive payment, about the truth or effect of which circumstances a dispute exists, a formal action to try the newly arisen issues would not only be proper, but some proceeding of the kind may be necessary.

For such reasons, actions upon judgments continue to be brought; and there is no doubt they have been permitted, from the earliest times of which we have knowledge, for other equally valid reasons. Our statutory proceedings in the nature of *scire facias* (Civ. Code, § 292) are pro-ceedings in the nature of an action, which afford means of disposing of many, if not all, such newly arisen issues; and these proceedings have the advantage over an ordinary action of retaining the entire record in the same Court, and of preventing unnecessary cost and inconvenience to the defendants. Whether they are intended as a substitute for all other actions upon a domestic judgment, as is claimed by the respondent, it is not necessary now to attempt to decide. On the subject of the common law right to the action of debt on judgment, an opinion of Chief Baron Comyn is mentioned in *Clark* v. *Goodwin* (14 Mass. 228), in which the Chief Baron places the right to bring debt upon judgment, on the ground that at common law the plaintiff had no other mode of recovering interest on his judgment. He states that final process did not authorize the collection of interest accruing after the rendition of the judgment; and it seems to have been his opinion that the right at common law to sue upon a judgment depended upon the necessity of the case, and on the circumstance that full redress could not be obtained without resorting to the action. It is argued that, at common law, the plaintiff was not required to set forth in his complaint any such special grounds, and hence it is inferred that none need exist. But since the Court takes notice of the law govern-ing its own process, the matters mentioned by the Chief Baron are such as need not be set forth in the pleading.

In South Carolina, the action being permitted upon a judgment where the original cause of action did not bear interest, it was said: "At common law no interest can be

collected upon an execution under a judgment, but interest is recoverable in an action of debt on judgment." (*Pinckney* v. *Singleton*, 2 Hill, S. Car. 343; *Harrington* v. *Glen*, 1 Hill, S. Car. 79.) It would seem from these cases, as well as from the opinion of Baron Comyn, above referred to, that the common law permitted the suing over a judgment whenever that was necessary to afford the plaintiff a means of having the full effect of his judgment, and not otherwise.

If the common law permitted debt upon judgment solely to enable the plaintiff to obtain interest upon his judgment, that reason for the practice would be inapplicable in a State where every judgment bears interest collectible by execution, and where interest can be obtained equally well without an action. It is a part of the common law that where the reason of the rule fails, the rule fails with it.

It was held in Connecticut, that "an action of debt on a judgment will not lie unless it appears that the plaintiff cannot otherwise have the effect of his judgment." (*Wells* v. *Dexter*, 1 Roote, 253.) And in Alabama it is a good defense to such action to show that execution is still available on the former judgment. (*White* v. *Hadnot*, 1 Port. 419.)

A similar opinion was expressed in *Lee* v. *Giles* (1 Bailey, 449).

The Court is of opinion that the plaintiff cannot claim a strict right to sue his judgment as often as he may choose without showing any necessity for such course. And if, in coming to this conclusion, it is necessary to disregard the positions stated in the cases of *Hale* v. *Angel*, and *Smith* v. *Mumford*, I should feel less hesitation in doing so for the reason already expressed in regard to those cases, and because of the peculiar position the question has occupied in that State as compared with other States. We conclude, from all the authorities presented, that neither the common law nor the practice in the various States of the Republic, nor anything inherent in the subject, based on sound reason, gives to a judgment creditor an absolute right of action on a domestic judgment unless such action is necessary in order to enable the plaintiff to have the full benefit of his judgment.

In considering the peculiar circumstances of this case as applicable to the second question, it must be observed that by the statute (Civ. Code, § 50) the plaintiff had one year in which he might file a transcript with the Clerk, and thus make the judgment a lien upon real estate, which time expired without such filing before this action was commenced. And by § 60 of the same Act, the plaintiff still has the right to file a transcript with a Justice of the Peace of any other county, which filing will authorize the Justice to issue execution and to enforce the judgment by levy upon personal property.     It seems to be understood, however, that any execution that can now issue, whether from the Court where the judgment was rendered or from one in which a transcript shall be filed, will only authorize a sale of personal property. It, therefore, may be a positive advantage and even a necessity to the plaintiff to have this action.   Possibly the plaintiff may never be able otherwise to have the full benefit of his judgment because the defendant may remain destitute of personal property.    Had the plaintiff shown a sufficient reason for not filing his transcript with the County Clerk, I confess I am unable to see how he could be denied this action.    And I come to the decision of this branch of the case with hesitation, and with the impression that if the case had been submitted to me at *nisi prius,* as it was to the County Judge of Benton County, as a new and undecided question in this State, and one that perhaps was, under the circumstances, *sub modo,* addressed to the discretion of the Court, I am no way confident that I should have held it incumbent on the plaintiff to set forth facts in excuse of his want of diligence, or to justify his failure to file a transcript within the year.   But there are many reasons in favor of the view that seems to have been taken by the County Judge. The case disclosed a want of diligence on the part of the plaintiff, from which had resulted whatever of disability he now seeks to avoid, and the facts stated do not show him entirely without remedy, nor present any excuse for the delay.

The County Judge violated no rule or precedent established in this State in ruling that the facts set forth in the

complaint did not lay a foundation for an action upon the judgment, and I am not prepared to say that the County Court committed an error, or to hold that the Circuit Court erred in sustaining the ruling.

It is the opinion of this Court that the judgment of the Circuit Court should be affirmed.